Thank you. Good morning, your honors. May it please the court. My name is Andrew Wyatt. I represent the appellant Claude Richardson. I would like to reserve five minutes for rebuttal, please. Just watch the clock, counsel. Thank you. Your honors, the issues on appeal today are, first, whether my client was disabled under the Rehabilitation Act, and secondly, whether he was retaliated for complaining about unlawful conduct. The district court found that my client was not disabled because, as the court had stated, it wasn't that he was unable to perform any of his duties. It was that he needed medical restrictions. Counsel, I've had trouble finding any case that supports your view that Richardson's or your client's suspension was an adverse action, employment action. What case supports your view? Well, your honor, actually, that is not specifically. That would go towards a retaliation claim. Well, this is one you better go to, then. She seems very interested. Yes, your honor, I'll address that. Your honor, the dispute resolution team reduced the – it was originally a termination and reduced it down to a written notice, and they found there was no cause for what was done. We cite that, not so much that my client shouldn't have any discipline. However, given his 26 years with the Postal Service, he never had any discipline at all, never a problem. And, yes, it was poor judgment to joke with a new supervisor. However, looking at the chain going from that, the so-called – When are we talking about? What particular action are we talking about now that you're suggesting is the reason for the adverse employment action? Okay. What are the fact situations? Okay. If I take the June 2007 action, that really doesn't work with an EEOC complaint because the complaint wasn't filed on time by then. So we've got – if I look at the rejected note from the doctor, that doesn't work because the complaint wasn't filed until July. So where are you going to find your adverse – that's what she's really asking. Yes, Your Honor. And let me refer to a case. I doubt it can be the two-day suspension with pay. That doesn't seem very adverse. I understand, Your Honors. It's a larger world. However, the fact that job duties are removed from an employee, that's also considered an adverse employment action. Well, let me ask you about that. Are we really talking about the action that happened in September? No, Your Honor. 2007? Which one are we talking about? We're talking about the adverse employment action that started on June 20th and then again on June 23rd of 2007. Well, there wasn't even an EEOC complaint by then, so what is the protected activity that you're suggesting happened that caused this problem? Because you've got to allege a protected activity, which I can find an EEOC complaint filing thereof would be such a thing, and then subjected to an adverse employment action. So if I look at what happened in June of 2007, the EEOC complaint wasn't filed until July, so I can't really look at that. If I look at the rejected note from the doctor and didn't limit his activity to two hours when reassigning, that doesn't work because the complaint didn't file until July. So I find myself going down through what you say the adverse employment actions are, and the only one I can get to is in September of 2007. Okay, Your Honor. Let me clarify that. First off, Mr. Richardson had a valid work restriction from March, so the change of the job duties was not even appropriate because that should have carried him for a year, to the March of the following year. So in June 20th, he's given these... Now, just a minute. What was the protected activity that you say he engaged in, which gives you the chance for retaliation? What is the protected activity he did? Your Honor, it... He filed an EEOC complaint. I can understand that. Yes. That is protected activity, but that doesn't happen until July 2007. Correct. So then the adverse employment action has got to happen after he files the complaint. And it does, Your Honor. What action? The notice of removal is July 26th. That's after the EEOC complaint. The letter of removal? No, Your Honor. They actually terminated him... It was the letter of removal, but this letter was rescinded by the DRT during the internal review. That's correct, Your Honor. How does that deter employees from making complaints? Because, Your Honor... If their own internal review says that's a stupid thing, get it out of there. Your Honor, essentially it's an appeal. He had to appeal it to another... Well, but that appeal, their own internal repeal said that's stupid. That isn't the way it ought to be. Get it out of there. And it was rescinded. So how does that keep employees from making complaints? Seems to me that says make complaints. We've got a good advisory appeal board that allows you to do what you need to do. However, Your Honor, also what's defined with an adverse employment action, it deters individuals from wanting to make these type of complaints. How does it deter when the people to whom that action would be appealed to confirm what the employee does, says it's just fine, and get rid of the letter? How does that deter? Well, again, Your Honor, to have to go through that entire process... That's a deter? Seems to me he put it in their face. He said to the ones issuing the letter, you're absolutely wrong. Even your bosses say you're wrong. I understand what you're saying, Your Honor. However, I think from the average employee's point of view, to go through a separation and have to depend on another body to determine whether... That's your best evidence? Well, again, Your Honor... Best adverse employment action? Is that where you want me to go on that letter of removal? Again, Your Honor, what I pointed to earlier was the fact that Mr. Richardson had to go out and work three hours carrying mail when his doctor told him that... That happened before the EEOC complaint. I realize that, Your Honor. However, making a complaint to your supervisor about unfair working conditions that are a violation of employment law, that also is an adverse employment action. That's a protected activity? Yes, Your Honor. Where do I find the case for that? Let me look for you. I'd like to point the Court to the case of Yartsov, Y-A-R-T-Z-O-F, F v. Thomas, 809 F. 2nd, 1371, 9th Circuit, 1987. That states a change in job assignments can be considered an adverse employment action. We're not talking about an adverse employment action. Okay, I understand, Your Honor. We're talking about a protected activity. Excuse me, Counsel, was Yartsov cited in your brief? Yes, it was, Your Honor. Maybe you can't get to that, but I'm just trying to tell you, it seems to me that reading the cases, the best you've got on a protected activity is the EEOC complaint. So I'm trying to put you with an adverse employment action after that complaint. And I'm trying to give you your best effort on that. I understand. I looked at your September 2007 allegation. But my worry is that the first time I saw September 2007, it was in, you weren't even making the argument. So I don't, the response brief doesn't even discuss the 2007 incident, but your reply brief doesn't even talk about it. So I'm a little worried about whether I can get to your 2007 incident because it doesn't seem to me you put it in front of me. So I'm stuck with issuing a letter of removal, and I'm stuck with making your client sit through a reading of the employee manual. One moment, Your Honor. I'm looking for it. You can always file a supplemental. Actually, Your Honor, since I'm reserving time, I can indulge the Court. I'll look for it while he's arguing, and then I'll come back. Very well. Submit it to a court of counsel. Very well, counsel. That'll be just fine. Thank you. But I know, assuming we get to, you don't do it now. No, he's reserving time. He wants to reserve five minutes. Well, I would like to ask one question before we reserve, if you use up your time. Assuming we get to September 14, 2007, where he was suspended with pay for two days, going back, where is there any case that says that that's an adverse employment action? Do you have any cases like that? On that issue, Your Honor, being suspended with pay for an adverse employment action, I do not have a case on point for that. Thank you, counsel. You may reserve the rest of your time. Thank you. We'll hear from the other side. Good morning, Your Honors. Assistant U.S. Attorney Keith Staub on behalf of the Postal Service. First, I wanted to address the EEO complaint issue. I understand that the district court pointed out in its ruling that there was an EEO complaint filed in July of 2007. As we pointed out below, and as is reflected in the record, an EEO complaint was filed in October of 2007, not in July of 2007. And that's at the supplemental excerpts of record at page 141. I appreciate you pointing that out, counsel. All I was trying to do is give the district court's interpretation of that to let him respond to my questions. But I appreciate that was going to be my last question. How are you going to do that if the complaint didn't come until October 2007? That being said, I'd like to address, first, that the Postal Service had a legitimate, nondiscriminatory reason for imposing the discipline it did, that being this threat of violence on the workroom floor. This was independently witnessed by Hugo Johnson, another supervisor, who recommended the letter of removal. That letter of removal was initiated on the date of this incident in June of 2007, even though it wasn't actually issued until a month later because it had to go through a different chain of command. Mr. Richardson was well aware of that policy of zero tolerance against violence. He was aware that he had to comply with the instructions of his supervisors. And knowing all of that, he still approached his supervisor, Mr. Williams, in a threatening manner. Well, this is on summary judgment. And with respect to retaliation, Mr. Richardson disputes that he was not following orders on September 14, 2007. Why doesn't this raise a tribal issue regarding whether or not Mr. Williams engaged in retaliation? Well, I think the evidence suggests otherwise, Your Honor. I think the evidence shows that he was questioning his superior. He did say, why do I have to go to the conference room? Why do I have to leave? He said, I'm not afraid of the pol po, the police coming. He clearly admits facts that show he was not complying with his superior's instructions. And similarly, the threat of violence is one that really has to be read in context. It's in the eyes of the person who feels threatened. The fact that the plaintiff might speculate as to whether or not he was approaching this man in a threatening manner, I think there's clear evidence demonstrating that Mr. Williams felt threatened. This was corroborated by an independent witness, Yuko Johnson, who felt there was a threat and appropriately recommended his removal for that threat. Well, but aren't we, if we can find a prima facie case and move to the government's response, the government will respond without any question what you've suggested. It was a violation of the policy, terminated for failing to follow orders. But now we're at pretext. I mean, that's the only place that we have to go after that. So as I understand the case law, you need to produce very little evidence of discriminatory motive to raise a genuine issue of fact. Can't we just say the complaint and the suspension were very close together and that would be enough? I don't believe so, Your Honor. I don't think the plaintiff has demonstrated any pretext. Well, but the complaint and the suspension being very close together can be enough to establish the causal link, can it? I think actually there is case law that suggests that timing, although for showing causation and retaliation, timing alone is not sufficient and I don't have the case name. I was going to say. I might have cited it in my brief, but timing alone does not demonstrate pretext. In order to show pretext, there has to be some demonstration that the reasons given by the agency lack credibility. In other words, Mr. Williams lacked credibility, that Yuko Johnson lacked credibility in their determination that there was a threat. Well, I'm a little worried with Bell v. Clackamas County, 341-Fed 3rd-858-2003 case. It says temporal proximity between the protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases. And I agree. As I pointed out to the court, I think that's true. Timing alone can be used to show a causal link between protected activity and adverse action. But as I pointed out, I think there are cases that say timing alone is not sufficient to show some pretext. In other words, the fact that something happened shortly before something else happened. If I look at the pretext, after finding those two particular situations were in temporal proximity, I have to give the plaintiff every benefit of the doubt by the allegations of their complaint, do I not? Especially when we have a motion like you made? Well, I don't believe, I think, again, he hasn't demonstrated pretext. Don't I have to review what he has alleged, giving him every benefit of the doubt in that particular situation? Well, clearly. Yeah, the opposing party in a motion for summary judgment. And so I look at his allegations. Now we know they're close in proximity. Then if I look at his allegations and say there might be something there, then I have to say go back to trial, don't I? Well, again, it comes down to whether there's a legitimate business reason demonstrated by the agency and whether there's evidence of pretext. And there isn't any evidence of pretext. There's no evidence that there was nothing discrediting Mr. Williams or Yuko Johnson's imposition of discipline. And I might add that the dispute resolution team corroborated that. They found that there was, in fact, a violation of policy. They did downgrade it to a letter of warning, but they did find it wasn't a violation of policy, that he did impose a threat and that he did not obey his instructions. Well, I have a tough time suggesting that that is anywhere binding on me in determining a motion for summary judgment, what this commission determined. My worry is that I have to give every benefit of the doubt to the plaintiff. And if, in fact, the protected activity is anywhere close to what happened in retaliation, I'm going to give him a presumption unless there's something that goes the other way, it seems. Well, I question the fact that there was a protected activity. First, we've determined that the EEOC complaint EEOC is filed in October, well after all of these incidents. All right. There is no protected activity that occurs before October of 2007. Counsel, do we have to reach this issue if we find that the court properly determined the disability issue? Well, there's two issues, retaliation and disability. Right. With respect to the disability issue, I think it's clear that there's no demonstration. I don't think you answered my question. Do we have to reach the retaliation issue if there is no disability shown? I think you do, Your Honor. You do. Right. There's, separate and apart from the disability discrimination, there's a contention that it shouldn't have been disciplined and that it was in retaliation for some protected activity which hadn't had occurred. All right. So it is two different things. So the disability issue is not a threshold. That's correct. They're two separate claims. All right. Very well. Going on to the disability claim, the court correctly found that the appellant failed to demonstrate a substantial limitation of a major life activity. There's very little in evidence demonstrating that he was not able to do all the major activities of life,  The only thing in the record is what his doctors gave him as far as medical limitations on the job. There's nothing in evidence about what he was able to do at home, what he wasn't able to do at home. Absent that, there's no evidence showing a substantial limitation of major life activities. Well, didn't they require him to do activities that his doctor said he shouldn't do? For instance, that he shouldn't walk for three hours or two hours or something, and yet the post office kept giving him duties that required him to go beyond the limitations prescribed by his doctor. Isn't that true? Well, that is not clear from the evidence, and I'll address that. It is true that his doctor limited it to two hours of walking, and he was given three hours of business delivery and mounted delivery. Mounted delivery involves driving your vehicle from receptacle to receptacle, not getting out, not walking, reaching through, delivering the mail. So we don't know from the record, and Mr. Richardson admitted this, and even Mr. Williams admitted this, they didn't know exactly how much walking would be involved in these three hours of delivering mail, because much of it was inside the truck. I see. Well, why wasn't his suspension on September 14th, why didn't that qualify as an adverse employment action in your view? Well, first of all, it wasn't adverse to the extent that he received pay for it. He got full pay. And secondly, there had not yet been a protected activity, so because there was no protected activity before the adverse action, there could be no retaliation. The protected activity was in the filing of an EEO in October after September 2007. Anything further, counsel? Unless the Court has some additional questions. No further questions. Mr. Wyatt, you have some reserved time. Thank you, Your Honors. Well, I was able to successfully locate the cases in my brief that cite my proposition that you don't have to have a formal complaint to have protected activity. And so I'd like to just recite some of the cases, Your Honor. Some are at Ninth Circuit, some are at other circuits. Now, these are all in your brief? They are in the brief, Your Honor. Maybe you could just point us to the page number and we could get to those and you could put more effort into your other arguments. Yeah, I apologize, the Court. I actually brought a summary of notes. I didn't bring the actual brief, so I'm not going to be able to do that. But it is in the section regarding the retaliation. Do you have any case names for us? Yes, ma'am, I certainly do. Could you just briefly give us those? Yes. The first case is Sherman v. Runyon. This is an Eighth Circuit case, 235F3406, pages 409, 410. And that is Eighth Circuit 2000. The next case is, this is Ninth Circuit, Sweet v. Tigard, hyphen, T-U-A-L-A-T-I-N, School District, 124F Appendix 482. At page 485, note 1, Ninth Circuit 2005. Barker. Is that an unpublished? No, Your Honor, I don't believe it is. Is it a district court case? Actually, Your Honor, I'm not sure at this point. It shows up on the appendix, so that's probably a non-pub case, isn't it? I'm not sure, Your Honor. 424 Federal Appendix. It's probably an unpublished decision. Okay. That probably has no precedent to our court. I also have a published case, Your Honors. All right. And that is Barker v. Riverside County Office of Education, 584F3, 821. At pages 824-26, Ninth Circuit 2009. Trent v. Valley Electric Association Incorporated, 41F3. Excuse me, I don't see Trent in your brief. Where would I find him? It may have been, Your Honor, in my reply brief. Oh, excuse me. And I apologize. I consolidated it for purposes of argument. No, that's not a problem. It's Trent v. Valley Electric Association Incorporated, 41F3, 524. At page 526, Ninth Circuit 1994. A few more. Valentin, V-A-L-E-N-T-I-N-L-M-E-D-A, versus Municipality of A-G-U-A-D-I-L-L-A, 447F3, 85, First Circuit 2006. And you're telling me all these cases say, telling your supervisor you could not perform your duties is a protected activity. Yes, Your Honor, that if you're complaining to your supervisor that you cannot perform because it exceeds your restrictions, that is a protected activity. All these cases say that. In one way or another, Your Honor, yes, they do. In one way or another. Yes, sir. Now, I'd just like to address, because I have very little time left, the contention about Mr. Johnson and his investigation. I provided deposition testimony in the record that Mr. Johnson came around three separate times, didn't observe an altercation where he had to step in. Another key witness, sorry, I'm forgetting her name now, the assistant supervisor, she was sitting at the table with Mr. Williams. They never interviewed her for it. I had asked her at her deposition. Also, when Sharon Whitaker, who was the union representative, went around asking everyone what they had seen, no one heard anything. So it essentially came down to Mr. Williams' word against Mr. Richardson's word. And, Your Honor, this just creates a troubled issue of fact that I believe is appropriate for the trier of fact to make a determination as to who's being forthright with the truth. So, and I also want to point out, Your Honors, and I'm almost out of time, is that for the adverse employment action, you talked about the suspension in terms of retaliation. For purpose of retaliation, you don't have to suffer a pecuniary loss for it to be considered an adverse employment action. So the fact that there's a suspension, even with pay, would still constitute an adverse employment action. And your case for that is? I'm sorry, Your Honor, I don't have it handy in front of me. I couldn't find a case. That's the purpose of my first question. I see. Thank you, counsel. Thank you, Your Honors. Your time has expired. The case just argued will be submitted for decision, and we will proceed to the last case on the oral argument docket this morning, Palm Wonderful v. Coca-Cola Company.
judges: Nelson, O'scannlain, Smith